Matter of Caleb A. (Destiny E.) (2025 NY Slip Op 05855)

Matter of Caleb A. (Destiny E.)

2025 NY Slip Op 05855

Decided on October 23, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:October 23, 2025

CV-24-0497 CV-24-1333
[*1]In the Matter of Caleb A. and Another, Neglected Children. Schenectady County Department of Social Services, Respondent; Destiny E., Appellant. (Proceeding No. 1.)
In the Matter of Caleb A. and Another, Alleged to be Dependent Children. Schenectady County Department of Social Services, Respondent; Destiny E., Appellant. (Proceeding No. 2.)

Calendar Date:September 8, 2025

Before:Clark, J.P., Aarons, Lynch, Ceresia and Fisher, JJ.

Veronica Reed, Schenectady, for appellant.
Christopher H. Gardner, County Attorney, Schenectady (Dylan J. Reilly of counsel), for respondent.
Mitchell S. Kessler, Cohoes, attorney for the children.

Clark, J.P.
Appeals (1) from an order of the Family Court of Schenectady County (Jill Polk, J.), entered February 16, 2024, which, in a proceeding pursuant to Family Ct Act articles 10 and 10-a, denied respondent's motion to terminate the placement of the subject children, and (2) from an order of said court, entered July 19, 2024, which, in a proceeding pursuant to Social Services Law § 384-b, among other things, freed the subject children for adoption.
Respondent was married to the biological mother of the subject children (born in 2009 and 2013)[FN1] from December 2013 until the mother's death in January 2021. The children were removed from the home in 2020 in connection with neglect proceedings commenced against the mother and respondent, as a person legally responsible for their care (see Family Ct Act § 1012 [g]). They were initially placed with respondent's mother and, subsequently, in nonrelative foster placements.[FN2]
The mother and respondent consented to neglect findings, and Family Court issued a one-year dispositional order that, among other things, required them to engage in services and comply with certain conditions. During the November 2020 court appearance at which respondent made his neglect admission, Family Court inquired about whether he had "any legal rights to these children."[FN3] Respondent replied that he had not adopted the children and his counsel confirmed that he was "a responsible adult in the household" and had no "legal rights established."
After the mother's death in January 2021, respondent filed a petition under Family Ct Act article 6 seeking sole legal and primary physical custody of the children, representing that he was the only remaining parental figure in their lives and had served in that role for the past nine years. This petition was subsequently converted, on consent, into a petition to terminate the children's placement under Family Ct Act § 1062.
On March 22, 2021, an initial appearance was held on respondent's Family Ct Act § 1062 petition. Although a permanency hearing was also scheduled for that date, Family Court did not proceed with the hearing, instead adjourning it to April 16, 2021 and indicating that respondent would only be allowed to participate if he established that he was the children's parent. The court gave counsel "[10] days . . . to make an argument that [respondent] is or should be considered a parent" and concluded that it would hear respondent's Family Ct Act § 1062 petition separately from permanency.
In accordance with Family Court's directive, respondent filed a motion to intervene in the permanency proceedings on the ground that he was a parent with the right to participate.[FN4] The April 16, 2021 permanency hearing was subsequently adjourned to May 5, 2021 and respondent was present with counsel on this date. Family Court denied respondent's request for a hearing on his Family Ct Act § 1062 petition to go forward before the permanency hearing and dismissed his motion to intervene in the permanency [*2]proceedings, without prejudice, on the ground that he did not submit a sworn affidavit in support of his claim that he was a parent with the right to participate. The court then conducted a permanency hearing, articulating that respondent "d[id] not at this point have standing to [participate]," but nevertheless allowed his counsel to make an argument in support of reinstating respondent's visitation with the children. After hearing arguments in this regard, the court granted respondent video chats with the children two times per week for 10 minutes each, changed the permanency goal to placement with a fit and willing relative, and set a date for the next permanency hearing.
Respondent subsequently filed an amended motion to intervene in the permanency proceedings as a parent, this time submitting a sworn affidavit in support of the claim. Petitioner and the attorney for the children (hereinafter AFC) both opposed the motion. During a court appearance on November 3, 2021, Family Court summarily rejected respondent's parentage claim relative to the older child since his affidavit revealed that he was "not involved in the planning of" such child; however, the court set a hearing date on respondent's parentage claim relative to the younger child since he alleged that there was a preconception agreement with the mother to jointly raise that child as coparents. At the end of this appearance, petitioner asked for an extension of the children's placement and the court entertained an argument by respondent's counsel in opposition. The court ultimately extended the children's placement and adjourned the matter accordingly.
A hearing on respondent's parentage claim relative to the younger child commenced on March 23, 2022.[FN5] Prior to the start of testimony, Family Court articulated that it was "going to hold at least [the] beginning of a hearing," but raised a concern that it may be "estopped" from finding that respondent was a parent given its prior ruling during the fact-finding portion of the neglect proceedings that respondent was only a person legally responsible for the children's care. Family Court directed counsel to submit memoranda on the issue and conducted the beginning of a hearing "without prejudice to whether or not ultimately the [c]ourt finds that it is estopped from reviewing th[e] issue." At the end of the testimony on this date, petitioner sought an extension of the children's placement and Family Court again allowed respondent to be heard in opposition to such request. The matter was adjourned to a future date for respondent to finish presenting his case.
During the subsequent appearance on May 23, 2022, Family Court issued a bench decision on respondent's parentage claim relative to the younger child, finding that respondent was "estopped" from succeeding on such a claim given the manner in which his legal status was adjudicated during the neglect proceedings. The court then calendared a hearing on his pending Family Ct Act § 1062 [*3]petition.[FN6]
An evidentiary hearing on respondent's Family Ct Act § 1062 petition commenced in November 2022 and testimony was taken at several hearing dates over the course of a year. Following the hearing, Family Court, by decision and order entered February 16, 2024, denied respondent's petition to terminate the children's placement, finding that their placement continued to serve the purpose of Family Ct Act article 10 and that "it would not be in their best interests to be released to [respondent] at this time." Thereafter, by decision and order entered July 19, 2024, Family Court granted petitioner's petition to terminate the deceased mother's parental rights and freed the children for adoption. Respondent appeals from both orders.
Respondent does not challenge the underlying merits of either order on appeal.[FN7] Rather, he argues that Family Court made several procedural errors in this case, necessitating reversal of the orders and remittal to Family Court for a new hearing on the issue of custody. Initially, we agree with respondent to the extent he argues that Family Court erroneously required him to establish parentage as a condition of participating in the permanency proceedings. By statute, respondent was a party to the permanency proceedings as a person legally responsible for the children's care (see Family Ct Act § 1089 [b] [1] [i]; Matter of Jessica F., 7 AD3d 708, 710 [2d Dept 2004]). Accordingly, he did not need to file a motion to intervene or to establish parentage in order to participate, particularly when the dispositional order entered against him was still in effect. Nevertheless, the record demonstrates that he was, in fact, allowed to participate at the permanency hearings on several dates. Although Family Court did not allow respondent to be present during the permanency hearing it conducted in May 2021, his counsel was present for the hearing, made an argument in support of respondent having additional video chats with the children, and did not object when the court switched the permanency goal to placement with a fit and willing relative.[FN8] In these particular circumstances, due to his involvement in the proceedings, we discern no reversible error (see generally Matter of Kimberly RR. [Gloria RR.-Pedro RR.], 165 AD3d 1428, 1429 [3d Dept 2018]).
Respondent additionally argues that Family Court erred in converting his custody petition into a petition under Family Ct Act § 1062 to terminate placement, and should have heard his custody petition jointly at the March 22, 2021 permanency hearing pursuant to Family Ct Act § 1089-a. However, respondent consented to the conversion of his custody petition, thereby waiving these arguments (see Matter of Sturnick v Hobbs, 191 AD3d 1375, 1375 [4th Dept 2021]; Matter of DiViteri v Saldana, 95 AD3d 1221, 1222 [2d Dept 2012]).[FN9] To the extent respondent argues that Family Court became erroneously sidetracked on the issue of parentage, thereby delaying the hearing on his Family Ct Act § 1062 [*4]petition, we agree that the better course would have been to hear testimony relative to that petition jointly with the permanency proceedings held prior to November 2022 (see Merril Sobie, Prac Commentaries, McKinney's Cons Laws of NY, Family Ct Act § 1066). That said, a joint hearing is not mandated (see Family Ct Act § 1064) and Family Court held a full evidentiary hearing on respondent's Family Ct Act § 1062 petition.
As for the appeal from the July 2024 order, respondent makes only a cursory argument challenging Family Court's estoppel ruling.[FN10] However, any error in that regard is academic in the context of the relief being sought on this appeal. Indeed, respondent represents in his appellate brief, and stated again during oral argument before this Court, that he is not seeking to establish parentage. Instead, his primary goal is to have his custody petition reinstated and the matter remitted to Family Court to hold a hearing on custody utilizing the best interests standard set forth in Family Ct Act § 1089-a. As previously noted, respondent received a full evidentiary hearing on his Family Ct Act § 1062 petition, during which Family Court heard testimony relative to his living situation and general ability to care for the children. Although we are mindful that the standard used to assess whether to grant a petition to terminate placement under Family Ct Act § 1062 differs from the best interests standard employed in Family Ct Act article 6 custody proceedings (see Family Ct Act § 1065 [a]; Matter of Eli KK. [Rebecca JJ.], 217 AD3d 1107, 1109 [3d Dept 2023]), Family Court nonetheless made a best interests determination in this case, finding, based upon the evidence adduced at the hearing, that it "would not be in [the children's] best interests to be released to [respondent] at this time." In these circumstances, there is no basis to remit for a new hearing.
Respondent's remaining contentions, to the extent not specifically addressed herein, have been considered and found lacking in merit.
Aarons, Lynch, Ceresia and Fisher, JJ., concur.
ORDERED that the orders are affirmed, without costs.

Footnotes

Footnote 1: A third child (born in 2006) was initially involved in these proceedings but has since turned 18. When used in this decision, references to the children pertain only to the children born in 2009 and 2013.
Footnote 2: By the time the orders on appeal were issued, the older child was residing in a Qualified Residential Treatment Program.
Footnote 3: Respondent is not a biological parent to the children and was in a same-sex relationship with the mother at this time. We are utilizing respondent's preferred pronouns.
Footnote 4: Respondent's counsel cited Family Ct Act § 1035 (f) as the statutory predicate authorizing his intervention. However, this statutory provision pertains to the intervention rights of adult siblings, grandparents, aunts and uncles not named as respondents in neglect proceedings (see Family Ct Act § 1035 [f]). Notably, both parents and persons legally responsible for the care of children in out-of-home placements are parties to the permanency proceedings (see Family Ct Act § 1089 [b] [1] [i]).
Footnote 5: The one-year dispositional order against respondent had expired by this point.
Footnote 6: Family Court directed petitioner to "submit an order" relative to its bench decision on this date, but the record does not reflect that a written order was entered.
Footnote 7: The AFC argues that the orders on appeal are unreviewable and, in any event, should be affirmed.
Footnote 8: Family Court's determination that respondent "[did] not . . . have standing to proceed in the permanency hearing" on this date was made "without prejudice" to his ability to participate in future hearings upon making an appropriate application.
Footnote 9: Moreover, it does not appear that respondent's custody petition was still pending by March 22, 2021, rendering Family Ct Act § 1089-a inapplicable.
Footnote 10: Contrary to the AFC's contention, even though the estoppel ruling was never reduced to a written order, it is properly reviewable on the appeal from the July 2024 final order since it necessarily affects that order (see CPLR 5501 [a] [1], [3]).